IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| TERRELL SIMMONS, | ) | CASE NO. 1:14-cv-02413 |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| ERNIE MOORE, WARDEN, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Terrell Simmons ("Simmons" or "Petitioner") filed this action pursuant to 28 U.S.C. § 2254 on October 22, 2014.[1]  Doc 1; Doc. 5.  Simmons challenges the constitutionality of his conviction in *State v. Simmons*, Case No. CR-554999 (Cuyahoga County).  Following a jury trial, Simmons was found guilty of one count of rape and one count of kidnapping.  Doc. 12-2, p. 5.  The trial court sentenced Simmons to a prison term of 15 years to life and classified Simmons as a Tier 3 sex offender.  Doc. 12-2, p. 6.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  On April 17, 2015, Respondent filed a Return of Writ (Doc. 12) and on June 15, 2015, Petitioner filed a Traverse to Respondent's Return of Writ (Doc. 16).

For the reasons set forth herein, the undersigned recommends that the Court **DISMISS in part** and **DENY in part** Simmons's petition.

---

[1] On October 30, 2014 this case was transferred from the Southern District of Ohio to the Northern District of Ohio. Doc. 3; Doc. 5.

## I.       Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.   The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) cert. denied, 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Simmons's conviction as follows:

{¶ 4} At trial, the female victim, T.J., testified that she met appellant on September 26, 2011, while riding a Rapid Transit Authority bus. T.J. testified that appellant approached her on the bus and, after some conversation, invited her to his mother's house to play cards. T.J. testified that she agreed and that she spent several hours with appellant at his mother's house. According to T.J., everything was normal and she was having a "nice time."

{¶ 5} While T.J. was at appellant's mother's home, her friend, Monta Collier, began calling and sending threatening text messages to T.J.'s cell phone. T.J. testified that Collier became upset when he learned that she was spending time with another man. Noticing T.J.'s reaction to Collier's comments, appellant's mother suggested that appellant walk T.J. home and spend the night to protect her from Collier, who lived in T.J.'s building. T.J. testified that she thought the suggestion was "weird," and she was not comfortable with appellant walking her home, but she went along with it due to the threatening nature of Collier's phone calls.

{¶ 6} As T.J. and appellant walked to T.J.'s apartment, they were confronted by Collier at the bus stop. T.J. testified she was nervous that Collier and appellant "might do something to each other," so she called her father to come pick up her and appellant. When her father arrived, he drove T.J. and appellant to her apartment. When asked why she permitted appellant to go home with her when she had a safe ride home, T.J. responded, "I should have left him there, but I still wasn't thinking straight."

{¶ 7} When they arrived at T.J.'s apartment, T.J. informed appellant that he could not sleep with her in her bed and that he would have to sleep on the couch. T.J. testified that appellant suddenly "got mad" and started pacing back and forth while pounding his hands. When appellant called his sister to help calm him down, T.J. went into the bathroom and locked the door. When she came out, she and appellant started to wrestle, and during the altercation she fell onto the couch. At that time, appellant ordered T.J. to move to her bed and to pull off her pants. T.J. testified that she believed appellant had a gun and that he would kill her if she did not comply.

2

{¶ 8} T.J. testified that appellant positioned himself on top of her and penetrated her vagina with his penis, without her consent. T.J. stated, "he pushed himself inside me and had sex with me. I was crying. He told me to stop crying and act like I'm into it. I stopped making crying noises but the tears were just running down my face." When appellant was finished with her, he laid on top of her and "held [her] tight." T.J. testified that when appellant got off her, she pretended to do homework, and she waited for appellant to fall asleep.

{¶ 9} Once appellant fell asleep, T.J. sent a text message to a friend she knew as "Tootie," who lived in the apartment building. T.J. sent three separate text messages to Tootie asking her to contact the police because she had just been raped and the man was still inside her apartment. When Tootie did not respond, T.J. woke appellant and asked him to take her to a hospital or to go with her to buy marijuana because she had severe stomach pain. T.J. testified that appellant agreed that he would go with her to purchase marijuana. T.J. stated that she and appellant then walked to a nearby gas station to buy a "shell" used to smoke marijuana. When they returned to the apartment building, T.J. convinced appellant to let her stop at Tootie's apartment so she could purchase marijuana. When Tootie answered her door, T.J. immediately pushed her way inside, locked the door on appellant, and called the police.

{¶ 10} Lawanda Black, a.k.a. Tootie, testified that on September 27, 2011, she was sleeping when T.J. knocked on her door. Tootie stated that when she opened the door, T.J. looked like she was scared and had been crying. Tootie testified that when T.J. came inside the apartment, she asked Tootie to "hurry up and lock the door" on appellant. Once inside, both T.J. and Tootie called the police because appellant was banging on the apartment door. Finally, Tootie confirmed that T.J. sent her three text messages indicating that T.J. had been raped, but stated she did not read them until after T.J. knocked on her door because she was sleeping.

{¶ 11} Officer Daniel Smith of the Cleveland Police Department testified that he responded to T.J.'s apartment complex on a report of sexual assault with the suspect still on the scene. When Officer Smith arrived at the apartment complex, he was let into the building by appellant. Officer Smith noticed that appellant matched the description of the suspect and apprehended him for further investigation. After conferring with T.J., Officer Smith placed appellant under arrest.

{¶ 12} At the hospital, T.J. was examined by Jessica Malave, a sexual assault nurse examiner ("SANE nurse"). Malave testified that on September 27, 2011, she conducted T.J.'s initial medical interview and subsequently obtained her voluntary consent to perform a rape kit. Malave testified that she documented T.J.'s statements "verbatim" in T.J.'s medical records, identified as state's exhibit No. 1. During the interview, T.J. told Malave that at approximately 12:03 a.m. on September 27, 2011, a "stranger" penetrated her vagina with his penis without her consent. Additionally, Malave testified that, as part of her examination, she is required to ask the patient to provide a written narrative, stating the history of the events in

her own words. Over appellant's counsel's objection, the trial court permitted Malave to read T.J.'s detailed account of her rape into the record.

{¶ 13} Dr. David Neimer, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, testified that he performed a DNA analysis on the vaginal swabs taken from T.J. As a result of the testing, Dr. Neimer discovered a DNA profile in the vaginal swabs that was consistent with appellant's DNA. Accordingly, Dr. Neimer testified that "Terrell Simmons [could] not be excluded as the source of the semen on the vaginal swabs."

*State v. Simmons*, 2013 WL 1858929, *1-3, 2013-Ohio-1308,¶¶ 4-13 (Ohio App. May 2, 2013);

*see also* Doc. 12-2, pp. 79-83

## II. Procedural Background

### A. State Conviction

On October 5, 2011, a Cuyahoga County Grand Jury indicted Simmons on one count of rape and two counts of kidnapping. Doc. 12-2, pp. 1-2. The indictment included a sexually violent predator specification pursuant to O.R.C. §2941.148(A) as to all three counts. *Id.* The indictment also included a sexual motivation specification pursuant to O.R.C § 2941.147(A) as to the two counts of kidnapping. *Id.* Following a jury trial, Simmons was found guilty of one count of rape (Count 1) and one count of kidnapping (Count 2); the jury was deadlocked as to the second count of kidnapping (Count 3) and by recommendation of the prosecutor the Court dismissed Count 3 without prejudice. Doc. 12-2, pp. 5-7. On June 1, 2012, the trial court sentenced Simmons to 15 years to life.[2] Doc. 12-2, pp. 6-7.

---

[2] The trial court merged Counts 1 and 2 for the purposes of sentencing and the state elected to proceed under Count 1. Doc. 12-2, p. 6.

**B. Direct Appeal[3]**

On June 28, 2012, Simmons, through counsel, filed a Notice of Appeal. Doc. 12-2, pp. 8-

11. In his appellate brief filed in the Eight District Court of Appeals (Doc. 12-2, pp. 15-31)

Simmons raised the following assignments of error.

1. The trial court erred to the prejudice of the Defendant in permitting the State to have a witness read an out-of-court statement of the alleged victim to the jury.

2. The trial court erred to the prejudice of the Defendant in entering a conviction which was against the manifest weight of the evidence.

Doc. 12-2, p. 18. The State of Ohio filed its response brief on November 26, 2012. Doc. 12-2,

pp. 32- 46. On May 2, 2013, the Court of Appeals affirmed the trial court's decision. Doc. 12-2,

pp. 47-63.

On June 13, 2013, Simmons acting *pro se* filed a Notice of Appeal to the Supreme Court

of Ohio (Doc 12-2, pp. 64-65) and a Memorandum in Support of Jurisdiction (Doc 12-2, pp. 66-

93), raising the following propositions of law:

1. When the evidence in a criminal case to support a finding of guilt is outweighed by the evidence of innocence, the resulting conviction by a Jury that lost its way is a violation of an Appellant's Constitutional Rights to a Fair Trial and the Due Process of Law, guaranteed by the 5th and 14th Amendments of the U.S. Constitution, and by Article I, Section 16 of the Ohio Constitution.

2. When hearsay testimony is interjected into a criminal trial to bolster the alleged victim's testimony in order to obtain a conviction, and that hearsay is not permitted under any hearsay exception covered in Evidence Rule 803(4), the Appellant is deprived of his Constitutional Rights to Confrontation, Due Process and a Fair Trial under the 5th, 6th, and 14th Amendments of the U.S. Constitution, and Article I, Sections 5, 10 and 16 of the Ohio Constitution.

---

[3] After he was sentenced and during the pendency of his direct appeal, petitioner filed a "Sentence of Motion Modification" on August 30, 2012. Doc. 12-2, pp. 105. Petitioner then filed "Motion to Compel Criminal Records of Prosecution Witness(es)" (Doc. 12-2, pp. 106-107) on September 4, 2013, which was subsequently denied on January 27, 2014 (Doc. 12-2, pp. 108).

Doc. 12-2, p. 67.  On July 15, 2013, The State of Ohio filed a Memorandum Opposing

Jurisdiction (Doc.  12-2, pp. 94-103) and on October 23, 2013, The Supreme Court of Ohio

declined to accept jurisdiction of Simmons's appeal (Doc. 12-2, p. 104).

### C.  Federal habeas corpus

Simmons, acting *pro se*, filed his Petition asserting two grounds for relief. Doc. 1. and

Doc. 5.  Respondent filed an Answer/Return of Writ.  Doc 12.  Petitioner filed a Traverse.  Doc.

16.  Each ground for relief is discussed more thoroughly below.

### III.    LAW and ANALYSIS

### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and  Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
>     application of, clearly established Federal law, as determined by the Supreme
>     Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
>     facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

## B.  Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a

federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner

must present his claims to the state courts as federal constitutional issues and not merely as

issues arising under state law.[4]  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir.

1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for

relief must be presented to the state's highest court in order to satisfy the fair presentation

requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902

F.2d 480, 483 (6th Cir. 1990).

   Additionally, a petitioner must meet certain procedural requirements in order to have his

claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th

Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion

of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v.

United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused

with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*,

460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still

---

[4] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*; *see also Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.[5]  *Coleman*, 501 U.S. at 750.

---

[5] "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*.  "A fundamental miscarriage of justice results

### C. Grounds for relief

#### 1. Ground One should be DISMISSED and/or DENIED

As for his first ground for relief, Simmons asserts:

Petitioner was prejudiced by an erroneous hearsay testimony at trial, which caused an unfair and different result and outcome of the trial proceedings.[6]

Doc. 5, p. 5.

Simmons raised Ground One in his direct appeal to the Eighth District Court of Appeals as his first assignment of error (Doc. 12-2, pp. 23-27, 54) and in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio as his second proposition of law (Doc. 12-2, pp. 74-75).

In Ground One, Simmons challenges the evidentiary ruling made by the trial court allowing SANE nurse Jessica Malave to read the victim's ("T.J.") out of court statement. In reviewing this claim, the state court of appeals provided the following analysis:

{¶ 17} In his first assignment of error, appellant argues that the trial court erred in permitting the state to have SANE nurse, Jessica Malave, read T.J.'s out-of-court statement to the jury. Appellant contends that T.J.'s statements made during the medical examination were hearsay and were not made for the purposes of medical diagnosis or treatment, and therefore did not fall within the hearsay exception under Evid.R. 803(4).

{¶ 18} The admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. *State v. Frazier,* 8th Dist. No. 97178, 2012–Ohio–1198, ¶ 17. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable, rather than a mere error in judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

---

from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)

[6] Simmons does not identify the "erroneous hearsay" in his Petition but the briefing makes clear that his challenge relates to the trial court's admission of SANE nurse Jessica Malave's testimony regarding the victim's statements to her.

{¶ 19} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. Should hearsay statements be admitted improperly, however, such error does not necessarily require reversal of the outcome of the trial if it was harmless. *See Arizona v. Fulminante,* 499 U.S. 279, 306–309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶ 20} Crim.R. 52(A) describes a harmless error as one that "does not affect substantial rights [and therefore] shall be disregarded." In order to find harmless error in a criminal matter, a reviewing court must find that the error was harmless beyond a reasonable doubt.*Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). When determining whether the admission of evidence is harmless, this court must find that "there is no reasonable probability that the evidence may have contributed to the defendant's conviction." *State v. Jones,* 9th Dist. No. 24469, 2010–Ohio–879, ¶ 46.

{¶ 21} Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The staff notes to the rule provide in pertinent part:

The circumstantial guaranty of trustworthiness of this exception is derived from the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements. * * * The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted.
Staff Notes to Evid.R. 803(4).

{¶ 22} "When examining the admissibility of hearsay statements under Evid.R. 803(4), the primary inquiry is whether the statements were made for the purposes of medical diagnosis or treatment, as opposed to some other purpose." *Fields v. CSX Transp., Inc.,* 197 Ohio App.3d 561, 2011–Ohio–6761, 968 N.E.2d 70, ¶ 17 (8th Dist.). As expressed by the Ohio Supreme Court: "The test under Evid.R. 803(4)goes solely to whether a statement was made for purposes of medical diagnosis or treatment. If a statement is made for purposes of diagnosis or

11

treatment, it is admissible pursuant to Evid.R. 803(4)." *State v. Dever,* 64 Ohio St.3d 401, 414, 1992–Ohio–41, 596 N.E.2d 436.

{¶ 23} At trial, Malave testified that she treated T.J. at MetroHealth Medical Center on September 27, 2011. She stated that, over the course of her direct examination, she obtained various information from T.J. concerning the nature of the rape, including the number of assailants and "exactly what happened as far as vaginal penetration, anal penetration, and any kind of oral contact." Malave explained that such information was necessary to effectively treat T.J. and collect specimens for her rape kit. Next, Malave testified that as standard procedure, she asked T.J. to provide a narrative of the rape in her own words. Over defense counsel's objection, the trial court permitted Malave to read T.J.'s word-for-word account of the incident into the record.

{¶ 24} The narrative stated, in pertinent part:
I was on my way home from school on the bus and he just came up to me and started talking. When it came to my bus stop he came off exit with me. We went to his family's house and we talked. I met his family and talked with his mom * * * His mom talked him into walking me home. I told him that he could sleep on the couch and then he said, you seriously are going to make me sleep on the couch? * * * Then he said, I'm about to really blow up. * * * I was on my bed and he came up into my face. I asked him to please get out of my face. He kept swearing at me and telling me to sit the fuck back and had his hand in a fist. * * * Then he started getting really mad. * * * I told him I had to go to the bathroom but he wouldn't let me leave. I had my phone in my hand and he hit the phone out of my hand. We were wrestling for a while. He told me to sit on the bed and to lay back and pulled my shorts off. He kept telling me to shut the fuck up. I was laying down and he just shoved it in me really hard. He kept telling me that I need to get into it and stop crying. He laid on top of me for 20 to 27 minutes just holding on to me when he was done to make sure that it all got in there. Then he made me look into his eyes and he said that I made him do this. He kept hugging me so I had to pretend like everything was okay so I could get him out of my apartment. He was lying in the bed so I pretended that I was doing homework. I went to the bathroom once he fell asleep so I could text my friend to get help. No one answered so I told him I had to go to the store and when we came back I knocked on my friend's door and locked myself in so I could call 911.

{¶ 25} On review of the record, it is evident that the information concerning T.J.'s physical injuries and how she was raped was necessary for proper medical treatment and diagnosis. However, we can find little evidence to suggest that

T.J.'s narrative aided in any sort of diagnosis or medical treatment. Rather, the details provided by T.J. in the narrative, such as how she met appellant, appellant's statements and demeanor during the rape, and T.J.'s actions following the rape, were not for the purpose of medical treatment, but rather related primarily to the investigation of appellant.

{¶ 26} Based on the foregoing, we are obligated to find that Malave's testimony concerning T.J.'s narrative would not fall within the hearsay exception under Evid.R. 803(4). However, as discussed below, the admission of these hearsay statements did not violate appellant's confrontation rights, and otherwise constituted harmless error. Therefore, we do not find that reversal is required in this matter.

{¶ 27} Although not argued by appellant, the testimonial nature of the improperly admitted hearsay statements raises the issue of the Confrontation Clause. In this case, however, T.J., the declarant, testified at trial and was subject to cross-examination. Therefore, because defense counsel was able to cross-examine T.J., appellant's confrontation rights were not violated. *See State v. Gray,* 12th Dist. No. CA2011–09–176, 2012–Ohio–4769, ¶ 48 (noting that when the declarant is present at trial and subject to cross-examination, the Confrontation Clause presents no constraints on the use of the prior testimonial statement). Moreover, Malave was also present at trial, and the defense was entitled to cross-examine her on her recitation of T.J.'s statements.

{¶ 28} Additionally, the error in admitting T.J.'s narrative was harmless pursuant to Crim.R. 52(A) because it was merely cumulative to the admissible testimony of T.J. *See State v. Greer,* 8th Dist. No. 91983, 2009–Ohio–4228, ¶ 59.

{¶ 29} In the case at hand, T.J. took the stand and provided substantial testimony regarding the events of the night, including the information provided in her narrative. Further, defense counsel conducted a substantial cross-examination relating to T.J.'s statements about her interaction with appellant. Accordingly, the jury was able to independently assess her credibility. *State v. Cappadonia,* 12th Dist. No. CA2008–11–13 8, 2010–Ohio–494, ¶ 20. As a result, it cannot be said that the result of the trial would have been otherwise, absent the inclusion of the narrative at trial. We therefore find that the trial court's error in admitting the narrative was harmless beyond a reasonable doubt.

{¶ 30} Appellant's first assignment of error is overruled.

*Simmons*, 2013 WL 1858929, *4-5

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Yet, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citing *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  However, the "category of infractions that violate 'fundamental fairness'" has been defined very narrowly.  *Dowling v. U.S.*, 493 U.S. 342, 353 (1990); *Bugh,* 329 F.3d at 512.  Accordingly, a state court's evidentiary ruling generally will not constitute a due process violation unless it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Bugh*, 329 F.3d at 512 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).  In light of the foregoing, to the extent Simmons's challenge in Ground One is based on state law evidentiary rules, his claim is not cognizable under federal habeas review.

To the extent Simmons contends he was denied due process because the admission of the out of court statement violated his rights under the Confrontation Clause his claim fails because there was no Confrontation Clause violation.  The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Supreme Court has held that the Sixth Amendment Confrontation Clause serves to bar out-of-court *testimonial* statements unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.  *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  Where non-testimonial statements are involved, the Confrontation Clause is not implicated.  *Davis v.*

14

*Washington¸* 547 U.S. 813, 821, 126 S.Ct. 226, 165 L.Ed.2d 224 (2006) ("A critical portion of

[the *Crawford*] holding . . . is the phrase 'testimonial statements.'  Only statements of this sort

cause the declarant to be a 'witness' within the meaning of the Confrontation Clause.").  Further,

under *Crawford,* if a prior statement is testimonial, the Confrontation Clause is nevertheless not

implicated where the declarant is subject to cross-examination at trial. *See Crawford*, 541 U.S.

36, 59 n.9; s*ee also Clement v. Kelly*, No. 14-3070, 2016 WL 611789, *7 (6th Cir. Feb. 16,

2016)(unpublished)(denying federal habeas relief and applying *Crawford* to conclude "that the

admission of [declarant's] prior sworn testimony did not present a Confrontation Clause problem

under clearly established Supreme Court precedent because he was present at [defendant's] trial

and was cross-examined . . . during trial."); *see also United States v. Vasilakos,* 508 F.3d 401,

411 (6th Cir. 2007)(finding no plain error or Confrontation Clause violation when the declarant

was present at trial and subject to cross-examination.)

      Here, the state appellate court determined in Paragraph 27 of its opinion quoted above,

that because T.J., the declarant, testified at trial[7] and was subject to cross-examination therefore

Simmons's confrontation rights were not violated despite the admission of the prior out of court

statement.  Simmons has not established that the state court's decision that the admission of the

narrative did not amount to a violation of his rights under the Confrontation Clause was contrary

to or an unreasonable application of clearly established federal law under *Crawford.*  Thus, to the

extent Simmons attempts to raise a Confrontation Clause Claim in Ground One,[8] that portion of

his claim should be **DENIED**.

---

[7] The state court also noted in Paragraph 27 that "[Nurse] Malave was also present at trial, and the defense was entitled to cross-examine her on her recitation of T.J.'s statements." *Simmons*, 2013 WL 1858929,  at *5

[8] In his Traverse, Simmons focuses his argument on the state court of appeal's harmless error determination.  Doc. 16; pp. 6-11.  Additionally, Simmons did not present a Confrontation Clause claim at every level of his direct appeal.  For example, Simmons raised the issue in his Memorandum in Support of Jurisdiction filed with the

Also, in order to determine whether a petitioner is entitled to federal habeas relief based on a constitutional error, the reviewing federal habeas court must determine whether the "error had substantial and injurious effect or influence in determining the jury's verdict" *see Brecht v. Abrahamson*, 507 U.S. 619 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  This is different from the harmless error review standard employed by reviewing courts on direct appeal.  There, the court must determine if the error committed was "harmless beyond reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24 (1967).  If a state court has reviewed such an error under the *Chapman* standard on direct appeal, a reviewing federal habeas court is not required to perform a formal application of both tests set out in *Chapman* and in *Brecht* as the "latter obviously subsumes the former."  *See Fry v. Pliler*, 551 U.S. 112, 120 (2007).  However, this does not mean that a state court's harmlessness review under *Chapman* has no significance.  *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015).  "When a *Chapman* decision is reviewed under AEDPA, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Id.* at 2199 (quoting *Fry*, 551 U.S. at 119).  Accordingly, a prisoner who seeks federal habeas relief must satisfy *Brecht,* and if the state court made a harmless error determination under *Chapman,* then the *Brecht* test subsumes the limitations imposed by AEDPA.  *Ayala*, 135 S. Ct. at 2199.

Here, Simmons has not shown that the admission of T.J.'s narrative fails the standard established in *Brecht*, i.e. he has not shown that the narrative had a "had substantial and injurious effect or influence in determining the jury's verdict."  As explained above, both T.J. and SANE Nurse Malave testified at trial and were subject to cross-examination.  Additionally, since both testified, T.J.'s narrative recounted by Nurse Malave was cumulative.  *Simmons*, 2013 WL

Supreme Court of Ohio but did not do so on direct appeal to the state court of appeals.  Doc. 12-2, p. 74.  Thus, this claim may be procedurally defaulted.  *Williams*, 460 F.3d at 806.

1858929, at *5.   Also, inconsistencies or credibility issues in a hearsay statement could be

challenged by cross-examination in front of the jury, and, even if T.J.'s testimony and the

narrative were not identical, Simmons has not explained how the narrative's inclusion at trial had

a substantial and injurious effect or influence in determining the jury's verdict.  Moreover,

considering the deferential standard under AEDPA, Simmons has not shown that the state court

of appeals' harmless error determination under *Chapman* was an unreasonable application of or

contrary to clearly established federal law.

Based on the foregoing, the undersigned finds that Simmons has not shown that the

admission of the hearsay statement was so egregious that its admission affected the fundamental

fairness of his trial and therefore amounted to a violation of due process. Accordingly, the

undersigned recommends that the Court **DISMISS and/or DENY** Ground One.

### 2.  Ground Two should be DISMISSED and/or DENIED

As his second ground for relief, Simmons asserts:

The offenses for which petitioner was convicted were against the manifest weight of
the evidence as the alleged victim in this case was personally and consentually
intimate with the petitioner, and the alleged victim also provided inconsistent and
uncorroborated testimony at trial.

Simmons raised a manifest weight of the evidence claim in his direct appeal to the Eighth

District Court of Appeal as his second assignment of error (Doc. 12-2, pp. 27-30) and in his

Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio as his first

proposition of law (Doc. 12-2, pp. 71-74).

"A 'manifest weight of evidence' claim, which is based on a state law concept that is

'both quantitatively and qualitatively different' from a constitutional due process sufficiency of

evidence standard, raises an issue of state law only that is not cognizable in a federal habeas

corpus proceeding," *Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) (citing 28 U.S.C.

§ 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1998)).  Accordingly, Simmons's manifest weight of the evidence claim is not cognizable.

Although not presented in Simmons's Petition or in his direct appeal, Respondent also responds to Ground Two by addressing the sufficiency of the evidence in his Return of Writ. Doc.  12, pp. 12-14.  In his Traverse, Petitioner argues manifest weight and sufficiency.  Doc. 16, pp.  11-12.  Since Simmons did not address or challenge the sufficiency of the evidence in his direct appeal in state court, any claim based on sufficiency of the evidence would be subject to dismissal based on procedural default. *Williams*, 460 F.3d at 806.   Additionally, a district court is not obligated to review a petitioner's claim that is first presented in the petitioner's traverse rather than in his habeas petition,  *see Tyler v. Mitchell*, 416 F.3d 500, 504 (6th. Cir. 2005). Accordingly, the Court need not address Simmons's sufficiency argument.  Nevertheless, in an abundance of caution, the undersigned has considered Simmons's sufficiency argument below.

Even if Simmons did not procedurally default a sufficiency of the evidence claim, his claim would be without merit.  In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*,

18

567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for

the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200

F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v.*

*Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight

as direct evidence").

   The Sixth Circuit "has long held that the testimony of the victim alone is constitutionally

sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir.

2008)(reversing the district court's decision to grant federal habeas relief on insufficiency

grounds where defendant's robbery conviction was based solely on the testimony of the

victim/homeowner).  Moreover, "even if the only evidence was testimony of the victim, that is

sufficient to support a conviction, even absent physical evidence or other corroboration." *Id.* at

659; *(*citing *United States v. Howard*, 218 F.3d 556, 565 (6th Cir.2000)).

   Simmons has not shown that, after viewing the evidence in the light most favorable to the

prosecution, no rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt. *See Jackson* 443 U.S at 319.  Here, as explained above, the victim testified

at trial, and a victim's testimony is independently sufficient to support a conviction. *See Tucker*,

541 F.3d at 658.  Simmons asserts in his sufficiency argument that T.J.'s testimony was not

credible.  Doc. 16, pp. 11-12.  Nonetheless, in making a determination as to sufficiency of

evidence, a court does not "re-evaluate the credibility of witnesses." *See Brown*, 567 F.3d at 205.

Accordingly, it cannot be said that T.J.'s independent testimony was legally insufficient to

support Simmons's conviction since the essential elements of the crime could be found within

her testimony, satisfying the standard in *Jackson*.

On federal habeas review, a second layer of deference applies "to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  This Court need not address this second layer of deference because Petitioner did not present a sufficiency claim in the state court of appeals and because, as discussed above, the sufficiency argument in his Traverse would not survive review under the first layer of deference.

For the reasons discussed herein, the undersigned recommends that the Court **DISMISS** Simmons's manifest weight claim as not cognizable and **DISMISS** Simmons's sufficiency of the evidence claim as procedurally defaulted and/or **DENY** said claim on the merits.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS in part** and **DENY in part** Simmons's Petition.

Dated: July 22, 2016

Kathleen B. Burke
United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).